**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **DR. JIANLI YANG**<br>232 E Street, NE<br>Washington, D.C. 20002<br><br>　　　　　　**Plaintiff,**<br><br>v.<br><br>**TA KUNG PAO**<br>342 Hennessy Road<br>2nd Floor<br>Wan Chai, Hong Kong<br><br>　　　　　　**Defendant.** | :<br>:<br>:<br>:  **CIVIL ACTION NO. _____**<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

**COMPLAINT**

Plaintiff Dr. Jianli Yang ("Dr. Yang"), by and through undersigned counsel, brings this action against Ta Kung Pao [大公报] for defamation and defamation per se and in support thereof alleges as follows:

**PARTIES**

1. Plaintiff Dr. Jianli Yang is an individual residing in Washington, DC.

2. Defendant, Ta Kung Pao, is a Chinese-language newspaper (print and on-line), with its principal place of business in Hong Kong, China. Defendant's publication is widely read and disseminated in this District.

**JURISDICTION AND VENUE**

3. Subject-matter jurisdiction is conferred on this Court pursuant to 28 U.S.C. § 1332(a) as the matter in controversy exceeds $75,000 (excluding interests and costs), and there is a complete diversity of citizenship.

4. Venue for all causes of action stated herein pursuant to 28 U.S.C. § 1391(b)(2) lies in the District of Columbia in that a substantial part of the events or omissions giving rise to the claim occurred in the District of Columbia, and Defendant directed acts to Plaintiffs in the District of Columbia.

## STATEMENT OF FACTS

5. Dr. Yang is a scholar, human rights activist, and world-renowned leader on the advancement of democracy in China.

6. Dr. Yang is the Founder and President of Citizen Power Initiatives for China ("CPIC"). CPIC is a non-profit organization whose mission is to advance a peaceful transition to democracy in China. CPIC regularly conducts research, holds press conferences, and publishes statements and articles in furtherance of this mission.

7. CPIC has published many articles criticizing the Chinese Communist Party ("CCP"). Some of CPIC's most recent works include March 18, 2019 article titled "China's Weapons of Mass Surveillance,"[1] and a March 4, 2019 press conference on China's religious persecution.[2]

8. Dr. Yang is also a research consultant for Harvard University, a Co-Founder of China Human Rights Accountability Center, Senior Advisor to the Human Rights Foundation, Senior Advisor to Raoul Wallenberg Center for Human Rights, Advisor to UN Watch, Advisor to Right to Nonviolence, Advisor to Freedom Now, Advisor to Freedom Rights Project, Senior Advisor to the International Chinese-Tibetan Association, Member of the International Commission for the Prosecution of Crimes Against Humanity of the Castro Regime, and Trustee of the Milton S. Eisenhower Foundation.

---

[1] https://www.citizenpowerforchina.org/single-post/2019/03/18/China%E2%80%99s-Weapons-of-Mass-Surveillance
[2] https://www.citizenpowerforchina.org/single-post/2019/02/28/Chinas-Worsen-Mass-Religious-Persecution

9. Dr. Yang was born in the Shandong Province of China. After getting a M.S. in Mathematics and teaching University for a year in China at the age of 23, Dr. Yang moved to the United States. He later earned Ph.D.s from University of California Berkeley and Harvard University.

10. In 1988, Dr. Yang believed that the first step of China's liberalization was for Chinese society to escape the control of the Chinese Communist Party ("CCP"). To facilitate this, Dr. Yang organized the first democratic election for the Chinese Student and Scholars Association at UC-Berkeley. He was elected President of the student organization and declared that it would have no affiliation with the Chinese Embassy. This was among the first independent overseas Chinese student organizations in the United States.

11. In 1989, Dr. Yang's fellow Chinese students at Berkeley elected him to travel back to Beijing to support their counterparts in China who were demonstrating for democracy in Tiananmen Square.

12. Dr. Yang joined the movement and witnessed the Chinese army massacre thousands of Chinese citizens. He narrowly escaped capture, and death, and returned to the United States. On June 21, 1989, Dr. Yang appeared in front of the United States Congressional Human Rights Committee as a witness of the Tiananmen Square Massacre.

13. On July 7 and 8, 1989, Dr. Yang again appeared as a Tiananmen Square Massacre witness in front of the United States Congress and the United Nations.

14. Later in 1989, Dr. Yang helped form the Independent Federation of Chinese Students and Scholars in the United States ("IFCSS") – the first ever independent student federation with grassroots chapters in nearly every U.S. college campus with Chinese students.

Dr. Yang also assisted in the founding of Federation for a Democratic China, a worldwide pro-Chinese democracy organization.

15. In 1990, Dr. Yang became a co-Founder and President of the Foundation for China in the 21st Century ("Foundation for China") until his arrest in China in 2002. The Foundation for China was the most important think-tank for China's peaceful transition to a constitutional democracy and served critical functions which included disseminating information to China, promoting human rights, and assisting democracy activists and independent scholars network in China by acting as their international advocate.

16. As the Foundation for China's President, Dr. Yang designed and conducted a research project entitled "China's Constitutional Future." The project, spearheaded by renowned scholars and practitioners from varying cultural, ethnic, religious, and regional backgrounds, produced a Constitution of the Federation of China. This draft Constitution, co-authored by Dr. Yang, has been used as one of the most important blueprints by Chinese dissidents and democracy scholars and practitioners. The Dalai Lama studied the draft Constitution and met with Dr. Yang in 1996 to discuss it.

17. Through his work promoting constitutional democracy in China, Dr. Yang realized the importance of the relations between and among different cultural, ethnic, religious, and regional groups. As one of the Foundation's major undertakings, Dr. Yang single-handedly launched various programs facilitating dialogues between these groups. He began with dialogues between the Han Chinese and Tibetans, across the Taiwan Strait. In 1995 in Boston, on the Dalai Lama's birthday, he organized the largest ever dialogue between the Dalai Lama and Chinese scholars.

18. In 2000, Dr. Yang expanded these dialogues to include other ethnic and regional groups by creating the annual Interethnic Leadership Conference ("ILC").

19. The ILC was founded with the guidance of the Dalai Lama and supported financially by the National Endowment for Democracy. The conferences are held every year in different locations throughout the world.

20. Since 2000, the ILC has involved more than 1,000 young leaders from varying ethnical and regional groups, world leaders, scholars, human rights activists, and non-governmental organization leaders. The ILC participants are committed to human rights as a universal value. The ILC has provided critical counterweight to the "divide and conquer" strategy of the CCP and seeks to empower young leaders to use tools and strategies of nonviolent resistance, social media influence, and unified citizen power in international advocacy.

21. Through the cooperative spirit of these conferences and work on joint projects/campaigns between the conferences, a strong coalition has been forged among these ethnic, religious, and regional groups. The ILC has become the single most important forum for planning and pursuing a peaceful transition to democracy in China.

22. In 2001, Dr. Yang founded the online magazine Yibao (translated to "Citizen Forum" in Chinese) and it is one of the most influential and widely circulated magazines run by the Chinese dissident community.

23. In 2002, after completing his Doctorate in Political Economy at Harvard University, Dr. Yang returned to China to help the labor movement with non-violent struggle strategies. He was arrested and sentenced to five years in prison, and kept in solitary confinement for a significant period of time. Following an international outcry for his release, including a

United Nations Resolution and unanimous vote of both houses of the United States Congress, Dr. Yang was freed in April 2007.

24. Immediately following his return to the United States, he formed Initiatives for China/Citizen Power, a pro-democracy movement and organization committed to a peaceful transition to democracy in China.

25. A few months after its formation, Initiatives for China/Citizen Power launched a demonstration of Citizen Power by sponsoring a 500-mile walk by Dr. Yang from Boston to Washington, D.C. (the "GongMin Walk") to highlight the human rights situation in China and call for continued American leadership in the struggle for peaceful democratic reform. The GongMin Walk received worldwide acclamation from leaders around the world, including His Holiness, the Dalai Lama, the Honorable Nancy Pelosi, and President Ma Ying-Jeo of Taiwan. Dr. Yang concluded the GongMin Walk by joining Speaker Pelosi at a large commemorative rally on Capital Hill on June 4, 2008, the 19th anniversary of the Tiananmen Square Massacre.

26. In March 2010, Dr. Yang co-chaired the Committee on Internet Freedom at the Geneva Human Rights and Democracy Summit.

27. In December 2010, in Oslo at the 2010 Nobel Peace Prize award ceremony, Dr. Yang represented the imprisoned Chinese democracy leader Liu Xiaobo (that year's Nobel Laureate), who later died in the CCP's custody on July 13, 2017.

28. In March 2011, Dr. Yang spoke at the United Nations Human Rights Council, directly questioning the representatives of China on Human Rights issues.

29. In December 2011, Dr. Yang joined the Dalai Lama and four other delegates to attend the Forum Democracy and Human Rights in Asia conference, hosted by former Czech President Vaclav Havel.

30. Later, Dr. Yang led a global campaign against China's bid for new membership on the United Nations Human Rights Council. Dr. Yang collected more than 12,000 signatures from Chinese citizens and more than 1 million signatures from individuals across the world.

31. In the Spring of 2014, Dr. Yang called for a global prayer for China, for its people and leaders, on the 25th anniversary of the Tiananmen Square Massacre. The call was echoed by spiritual leaders throughout the world, including the Dalai Lama and Archbishop Desmond Tutu.

32. In support of Hong Kong's umbrella movement, Dr. Yang initiated and led petitions to the White House in support of Hong Kong's democracy and to prevent a second Tiananmen Square Massacre.[3]

33. On December 10, 2015, Dr. Yang launched two worldwide campaigns titled "Inscribe the Tiananmen Massacre on the Unesco's Memory of the World Register" and "Seek Truth about the Two Tiananmen Tank Men."

34. Over the years, Dr. Yang has helped design, launch, and lead numerous major citizen initiatives. Dr. Yang is a frequent contributor to and interviewee by the international media, panelist at hearings held by United States Congress, European Parliament, UK Parliament and Taiwan Legislative Yuan.

35. Dr. Yang has received many awards for his work. From 2009-2017 he was elected as one of the Top 100 Chinese Public Intellectuals.

36. Dr. Yang's awards include: Recipient of the 2013 Truman-Reagan Freedom Award; 2013 Harvard Kennedy School Alumni Achievement Award; 2012 CEPOS Freedom Award; 2012 Morris Abram Human Rights Award (UN Watch); 2007 First Freedom Pioneer Award (Beijing); 2007 Freedom Spirit Award (Independent Federation of Chinese Scholars and

---

[3] The White House responded to Dr. Yang's petition, *see* https://petitions.obamawhitehouse.archives.gov/petition/support-hong-kong-democracy-and-prevent-second-tiananmen-massacre-hong-kong.

Students in the United States); 2006 Democratic Hero Award (Asian-Pacific Foundation for Human Rights in New Zealand); 2003 Spirituality and Justice Award (All Saints Parish Episcopal Church of Brookline, Massachusetts); 2002 Outstanding Democracy Fighter Award (Chinese Democracy Education Foundation); 1999 Sun Yat-Sen News and Cultural Award (Sun Yat-Sen Cultural Foundation in the United States); 1999 First Prize in Essay Competition sponsored by "Central Daily" in Taiwan; 1991 Outstanding Graduate Instructor Award (University of California Berkeley); 1990 Outstanding Chinese Student in America Award (Education Foundation in San Francisco).

37. On November 22, 2018, Defendant published an article titled "Yang Jianli Repeatedly Launches Anti-China Campaigns and Moves Closer to CIA."[4] A certified translation of that article, along with the original, is attached hereto as **Exhibit 1**.

38. In that Article, Defendant states that Dr. Yang "[c]ooperates closely with the U.S. Central Intelligence Agency." (hereinafter referred to as the "Defamatory Statement") (See, **Exhibit 1**).

39. The Defamatory Statement is false. Dr. Yang does not "cooperate closely with the U.S. Central Intelligence Agency."

40. Ta Kung Pao's Article was published via its website and disseminated to thousands of readers, including many readers here in Washington, D.C.

41. Upon information and belief, the Article was republished to various other websites.

42. The Defamatory Statement is part of the CCP's scheme to discredit and destroy all Chinese dissidents, particularly those who advocate for constitutional democracy.

---

[4] *See* http://www.takungpao.com/news/232109/2018/1122/208575.html

43. It is a well-known fact that the CCP controls many media outlets in China, including Ta Kung Pao. It is also known that the CCP will purchase those few remaining news outlets that remain independent, in order to maintain control.

44. It is widely reported that Ta Kung Pao is a state-owned and controlled news outlet.

45. Upon information and belief, the CCP used Ta Kung Pao to publish the Article containing the Defamatory Statement in an effort to punish, defame, and discredit Dr. Yang for his continued work as a Chinese pro-democracy activist.

## COUNT I
## Defamation

46. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

47. The Defamatory Statement that Plaintiff "[c]ooperates closely with the U.S. Central Intelligence Agency" is false and concerns the Plaintiff.

48. Defendant published the written Defamatory Statement without privilege to third parties via its website, which has been viewed by hundreds of thousands of visitors. No privilege, absolute or conditional, attaches to the Defamatory Statement.

49. The defamation is clear from the false Defamatory Statement itself or by implication, omission, and/or innuendo that may require extrinsic facts not contained in the Defamatory Statement.

50. Defendant made the Defamatory Statement with actual malice knowing the Defamatory Statement was false or made the Defamatory Statement with reckless disregard for whether the Defamatory Statement was false when it published the Article.

51. Upon information and belief, the Article containing the Defamatory Statement was repeated and published to hundreds of thousands of people, in the public domain.

52. Defendant's actions were willful, wanton, and malicious, and made with the intent to harm Plaintiff's reputation, business interests, and profession.

53. The Article containing the Defamatory Statement by the Defendant was intended to permanently damage Dr. Yang's profession and trade as a Chinese democracy activist, scholar, professor, author, researcher, consultant, and speaker and to permanently damage Dr. Yang's reputation in the eyes of the Chinese Dissident community and the world at large.

54. Alternatively, Defendant made the Defamatory Statement in the Article by failing to act with a reasonable level of care to determine whether or not the Defamatory Statement was false when it published the Defamatory Statement.

55. As a direct and proximate result of the Defendant's acts, Plaintiff has suffered and continues to suffer substantial injury to his reputation, business interests, and profession.

56. As a direct and proximate result of Defendant's acts, Dr. Yang has suffered and will continue to suffer damages including loss of income, lost business opportunities for his various non-profit organizations, past pecuniary expenses, future pecuniary expenses, and damage to his reputation as a Chinese democracy activist.

57. The Defamatory Statement that Plaintiff "[c]ooperates closely with the U.S. Central Intelligence Agency" constitutes defamation and has caused damage to Plaintiff.

58. Due to the severity of Defendant's Defamatory Statement, Plaintiff is entitled to punitive damages.

## COUNT II
### Defamation Per Se

59. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

60. The Defamatory Statement that Plaintiff "[c]ooperates closely with the U.S. Central Intelligence Agency" is false and concerns the Plaintiff.

61. Defendant published the written Defamatory Statement without privilege to third parties via its website, which has been viewed by hundreds of thousands of visitors. No privilege, absolute or conditional, attaches to the Defamatory Statement.

62. The defamation is clear from the false Defamatory Statement itself or by implication, omission, and/or innuendo that may require extrinsic facts not contained in the Defamatory Statement.

63. Defendant made the Defamatory Statement with actual malice knowing the Defamatory Statement was false or made the Defamatory Statement with reckless disregard for whether the Defamatory Statement was false when it published the Article.

64. Upon information and belief, the Article containing the Defamatory Statement was repeated and published to hundreds of thousands of people, in the public domain.

65. Defendant's actions were willful, wanton, and malicious, and made with the intent to harm Plaintiff's reputation, business interests, and profession.

66. The Article containing the Defamatory Statement by the Defendant was intended to permanently damage Dr. Yang's profession and trade as a Chinese democracy activist, scholar, professor, author, researcher, consultant, and speaker and to permanently damage Dr. Yang's reputation in the eyes of the Chinese Dissident community and the world at large.

67. Alternatively, Defendant made the Defamatory Statement in the Article by failing to act with a reasonable level of care to determine whether or not the Defamatory Statement was false when it published the Defamatory Statement.

68. As a direct and proximate result of Defendant's acts, Plaintiff has suffered and continues to suffer substantial injury to his reputation, business interests, and profession.

69. As a direct and proximate result of the Defendant's acts, Dr. Yang has suffered and will continue to suffer damages including loss of income, lost business opportunities for his various non-profit organizations, past pecuniary expenses, future pecuniary expenses, and damage to his reputation as a Chinese democracy activist.

70. The Defamatory Statement that Plaintiff "[c]ooperates closely with the U.S. Central Intelligence Agency" constitutes defamation per se and has caused damage to Plaintiff.

71. Due to the severity of Defendant's Defamatory Statement, Plaintiff is entitled to punitive damages.

**PRAYER FOR RELIEF**

WHEREFORE Plaintiffs prays for the following relief:

(a) damages in an amount no less than $10,000,000.00;

(b) interest from the date of judgment pursuant to 28 U.S.C. § 1961;

(c) punitive damages in an amount sufficient to deter further tortious and malicious behavior by Defendant;

(d) costs, expenses, and attorney fees incurred by Plaintiff, in this case; and

(e) such other and further relief as this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff requests a trial by jury on any and all issues so triable.

                                      Respectfully submitted,

Date: May 9, 2019                       */s/ Daniel S. Ward*

                                      Daniel S. Ward (DC Bar # 474339)
                                      WARD & BERRY PLLC
                                      2000 Pennsylvania Avenue, NW
                                      Suite 4500
                                      Washington, D.C. 20006
                                      Phone: (202) 331-8160
                                      dan@wardberry.com

                                      *Counsel for Plaintiff*