UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DR. JIANLI YANG, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 19-1355 (RBW) |
| TA KUNG PAO, | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

The plaintiff, Dr. Jianli Yang, brings this civil action against the defendant, Ta Kung Pao, a Chinese-language newspaper, asserting claims of defamation and defamation per se. See Complaint ("Compl.") ¶¶ 2, 46–71. Currently pending before the Court is the Defendant's Motion to Limit Jurisdictional Discovery (the "defendant's discovery motion" or "Def.'s Mot."), ECF No. 24. Upon careful consideration of the parties' submissions[1] and the parties' arguments presented at the motion hearing on March 3, 2021, the Court concludes for the following reasons that it must grant in part and deny in part the defendant's discovery motion.

### I. BACKGROUND

The plaintiff represents that he "is a scholar, human rights activist, and world-renowned leader on the advancement of democracy in China," Compl. ¶ 5, as well as a resident of the District of Columbia, see id. ¶ 1. According to the plaintiff, the defendant is "a Chinese-language newspaper" with "its principal place of business in Hong Kong, China." Id. ¶ 2. The

---

[1] In addition to the filings already identified, the Court considered the following submission in rendering its decision: the Plaintiff's Opposition to Defendant's Motion to Limit Jurisdictional Discovery ("Pl.'s Opp'n"), ECF No. 25.

plaintiff further alleges that "[i]t is widely reported that [the defendant] is a state-owned and controlled news outlet." Id. ¶ 44.

In his Complaint, filed on May 9, 2019, the plaintiff alleges that, "[o]n November 22, 2018, [the d]efendant published an article titled 'Yang Jianli Repeatedly Launches Anti-China Campaigns and Moves Closer to CIA.'" Id. ¶ 37. In that article, the defendant is claimed to have written that the plaintiff "[c]ooperates closely with the U[nited] S[tates] Central Intelligence Agency." Id. ¶ 38 (first alteration in original). The plaintiff asserts that this statement is "[d]efamatory" and "false[,]" id. ¶ 39, and the article caused him to, inter alia, "suffer substantial injury to his reputation, business interests, [ ] profession . . . [,] loss of income, lost business opportunities for his various non-profit organizations, past pecuniary expenses, future pecuniary expenses, and damage to his reputation as a Chinese democracy activist," id. ¶¶ 55–56.

On October 9, 2019, the defendant filed a motion to dismiss the plaintiff's original Complaint under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6). See generally Defendant Ta Kung Pao's Motion to Dismiss, ECF No. 6. On November 22, 2019, rather than filing an opposition, the plaintiff filed a motion to amend the Complaint, indicating that he believed he was "entitled to do this as a matter of course under [Federal Rule of Civil Procedure] 15(a)(1)(B), because of deadline extensions" given in the course of briefing on the motion to dismiss. Plaintiff's Motion for Leave to File Plaintiff's First Amended Complaint at 2, ECF No. 8. On December 10, 2019, the defendant filed an opposition to the plaintiff's motion for leave to amend, arguing, inter alia, that the plaintiff's proposed amendments were futile because "the Court lacks personal jurisdiction over" the defendant. Defendant's Reply Brief in Opposition to Plaintiff's Motion to Amend and in Further Support of its Motion to Dismiss the Complaint for Lack of Personal Jurisdiction and Failure to State a Claim at 3, ECF No. 11. In his response to

the defendant's futility argument, the plaintiff requested—should the Court deny leave to amend—that the Court grant him "the ability to conduct limited discovery to determine the full extent of [the d]efendant's contacts with the District." Plaintiff's Reply to Defendant's Reply Brief in Opposition to Plaintiff's Motion to Amend (ECF 11) and Plaintiff's Opposition to Defendant's Motion to Dismiss the Complaint (ECF 11) ("Pl.'s Reply") at 8, ECF No. 14.

On November 30, 2020, the Court denied both the defendant's motion to dismiss and the plaintiff's motion to amend without prejudice. Order at 7–8 (Nov. 30, 2020), ECF No. 21. Specifically, the Court "conclude[d] that . . . the plaintiff ha[d] not satisfied his burden to present nonconclusory and specific allegations connecting the defendant to this forum in his proposed amended complaint[.]" Id. at 5. However, exercising its broad discretion, the Court granted the plaintiff's request for limited jurisdictional discovery, concluding that the plaintiff had established a good faith belief that jurisdictional discovery would aid in establishing personal jurisdiction. See id. at 5–6. In doing so, the Court recognized the plaintiff's goal for seeking discovery

> to determine, inter alia, any and all donations or payments to [the d]efendant originating in [the District of Columbia], any of [the d]efendant's e-mail lists or accounts identifying [District of Columbia] subscribers or viewers, any advertisements purchased in the United States by [the d]efendant, and the sales or distribution of Ta Kung Pao [ ] within this District, including at the Chinese embassy.

Id. at 6 (quoting Pl.'s Reply at 11).

On December 18, 2020, the parties appeared before the Court for a status conference to discuss the scope of jurisdictional discovery and set a schedule for the completion of that discovery. See id. at 8; Order at 1 (Dec. 29, 2021), ECF No. 22. During that status conference, the Court heard argument from counsel regarding outstanding disputes and ordered that "jurisdictional discovery in this case shall be limited to activities having an impact in the District

3

of Columbia within the three-year period ending on May 19, 2019." Order at 1 (Dec. 29, 2021), ECF No. 22. However, due to other outstanding issues regarding the scope of jurisdictional discovery, the Court set additional dates for further briefing. On January 15, 2021, the defendant filed its discovery motion, see generally Def.'s Mot., and, on January 29, 2021, the plaintiff filed his opposition, see generally Pl.'s Opp'n. The Court heard additional oral argument on March 11, 2021. See Minute Entry (Mar. 11, 2021).

## II. STANDARD OF REVIEW

"When faced with a motion to dismiss for lack of personal jurisdiction, a plaintiff is 'entitled to reasonable discovery.'" Lewis v. Mutond, Civ. Action No. 16-1547 (RCL), 2021 WL 4355421, at *4 (D.D.C. Sept. 24, 2021) (emphasis in original) (quoting Diamond Chem. Co., Inc. v. Atofina Chems., Inc., 268 F. Supp. 2d 1, 15 (D.C. Cir. 2003)). "It is well established that [a] 'district court has broad discretion in its resolution of [jurisdictional] discovery problems.'" FC Inv. Grp. LC v. IFX Mkts., Ltd., 529 F.3d 1087, 1093 (D.C. Cir. 2008) (quoting Naartex Consulting Corp. v. Watt, 722 F.2d 779, 788 (D.C. Cir. 1983)). "A party is entitled to jurisdictional discovery if [he] shows that [he] can supplement [his] jurisdictional allegations through discovery[,]" and "[t]his is so even where the party has failed to establish a prima facie case of personal jurisdiction . . . as long as the party has at least a good faith belief that discovery will enable [him] to establish personal jurisdiction." Blount v. U.S. Sec. Assocs., 930 F. Supp. 2d 191, 197 (D.D.C. 2013) (citations and internal quotation marks omitted). However, "[r]equests for jurisdictional discovery . . . 'cannot be based on mere conjecture or speculation.'" Lewis, 2021 WL 4355421, at *4 (quoting FC Inv. Grp. LC v. IFX Mkts., Ltd., 529 F.3d 1087, 1094 (D.C. Cir. 2008).

### III.    DISCUSSION

The defendant's discovery motion contends that jurisdictional discovery should be limited to exclude potential discovery (1) outside of purported parameters set by the plaintiff's Complaint, (2) regarding the defendant's corporate affiliates, and (3) regarding the Foreign Sovereign Immunities Act (the "FSIA").  See generally Def.'s Mot.  The Court will address each of these arguments in turn.

#### A.    Limitations Based on the Complaint

The defendant posits that because the plaintiff's Complaint alleges "jurisdictional allegations concer[ing] [the defendant's] online publication of a single Chinese-language article accessible to readers in the District; nothing more[,]" the plaintiff may not "now seek[] jurisdictional discovery more generally."  Def.'s Mot. at 3.  According to the defendant, the plaintiff's efforts amount to "a fishing expedition divorced from the Complaint's factual allegations."  Id. (citing Crist v. Repub. of Turkey, 995 F. Supp. 5, 13 (D.D.C. 1998); Dickson v. United States, 831 F. Supp. 893, 900 (D.D.C. 1993); Savage v. Bioport, Inc., 460 F. Supp. 2d 55, 62 (D.D.C. 2006)).  The defendant characterizes the Court's jurisdictional discovery order as "charitable" and argues that the "[p]laintiff should get what the Court allowed, nothing more."  Def.'s Mot. at 4.

The plaintiff responds that the defendant mischaracterizes the breadth of his jurisdictional allegations and contends that his Complaint presents jurisdictional allegations beyond the "article [that] is the focus of [the p]laintiff's defamation claim."  Pl.'s Opp'n at 3.  Furthermore, the plaintiff argues that he has "shown a 'colorable basis' for the commencement of jurisdictional discovery through his other filings, including, but not limited to[,] his citation of various news articles regarding [the defendant's] ownership structure."  Id. (quoting, 460 F. Supp. 2d at 62).

5

The defendant's argument on this issue is misplaced. "A party is entitled to jurisdictional discovery if [he] shows that [he] can <u>supplement</u> [his] jurisdictional allegations through discovery[,]" and "[t]his is so even where the party has failed to establish a prima facie case of personal jurisdiction . . . as long as the party has at least a good faith belief that discovery will enable [him] to establish personal jurisdiction." <u>Blount v. U.S. Sec. Assocs.</u>, 930 F. Supp. 2d 191, 197 (D.D.C. 2013) (emphasis added) (citations and internal quotation marks omitted). Where a plaintiff demonstrates "in his complaint the factual background warranting discovery for jurisdiction," a court may permit corresponding jurisdictional discovery. <u>See</u> <u>Dickson</u>, 831 F. Supp. at 900. On the other hand, a complaint that is "bare on the facts" would not merit jurisdictional discovery. <u>See</u> <u>id.</u>

The Court has already determined that the plaintiff's allegations are sufficient to demonstrate the need for jurisdictional discovery, and the Court likewise previously concluded that "the plaintiff has advanced several allegations that establish his good faith belief" that discovery would enable him to establish personal jurisdiction. <u>See</u> Order at 7 (Nov. 30, 2020), ECF No. 21. Specifically, the Court highlighted the following allegations as establishing a good faith belief:

> (1) that the defendant publishes many articles specifically addressing news relating to the District of Columbia, (2) that the defendant's website is available twenty-four hours a day to District residents and allows users to sign up for accounts, (3) that several papers are distributed throughout the District in Chinese, and (4) that the defendant's paper can be read by residents of the District, which has thousands, if not tens of thousands, of native Chinese speakers (and readers).

<u>Id.</u> (internal alterations, quotations, and citations omitted).

While the defendant might consider the Court's ruling "generous" and "charitable," Def.'s Mot. at 4, the defendant ultimately neglects to explain how its proposed limitation would square with the Court's discretion to grant jurisdictional discovery should the plaintiff

6

demonstrate the requisite good faith belief that jurisdictional discovery would aid his attempts to establish personal jurisdiction. Cf. Blount, 930 F. Supp. 2d at 197. The defendant's arguments suggest that it does not desire to impose additional limits on the scope of discovery pursuant to some legal standard, but that it simply seeks to relitigate the issue of whether the plaintiff is entitled to jurisdictional discovery. However, the Court has already determined that the plaintiff is entitled to jurisdictional discovery. Order at 7 (Nov. 30, 2020), ECF No. 21. Thus, to the extent the defendant is attempting to relitigate that issue, the Court must deny its request.

To the extent the defendant seeks to constrict the scope of discovery based on the precise terms of the Complaint, the Court sees no reason to limit the general scope of jurisdictional discovery beyond requiring "precisely focused discovery aimed at addressing matters relating to personal jurisdiction." See GTE New Media Servs. Inc. v. BellSouth Corp., 199 F.3d 1343, 1352 (D.C. Cir.2000); see also Hearing Tr. at 19:18–23 (Dec. 18, 2020), ECF No. 23 (permitting "discovery to go forward so long as it is seeking to establish the perimeters of [the Court's] authority to exercise jurisdiction under the Long-Arm statute against an entity that is outside of the District of Columbia or has engaged in activity [inside] of the District of Columbia").[2] In any event, the defendant has not established that the terms of the Complaint must somehow provide additional or alternative limitations on the scope of discovery. See, e.g., Crist v. Repub. of Turkey, 995 F. Supp. 5, 13 (D.D.C. 1998) (concluding that the plaintiffs had not met the baseline entitlement to jurisdictional discovery because the "[p]laintiffs' request for jurisdictional discovery provide[d the] court with nothing more than conjecture and surmise . . . ."); Dickson v. United States, 831 F. Supp. 893, 900 (D.D.C. 1993) (denying a request for both jurisdictional

---

[2] Furthermore, the Court agrees with the plaintiff that "[l]imiting jurisdictional discovery to the metes and bounds of the Complaint . . . would create a needless logjam and wasteful briefing and delay[]" wherein the "[p]laintiff would seek to amend his complaint . . . [] leading to yet another round of [m]otions to [d]ismiss, and another battle about jurisdictional discovery." Pl.'s Opp'n at 5.

7

discovery and amendment where the plaintiff did not "provide[] in his complaint the factual background warranting discovery for jurisdiction[]"); Savage v. Bioport, Inc., 460 F. Supp. 2d 55, 62–63 (D.D.C. 2006) (concluding it was "implausible that any additional discovery would be sufficient to establish general jurisdiction in the District of Columbia[]").

### B.     Corporate Affiliates and Relationships

Next, the defendant contends that the "[p]laintiff now seeks to obtain information about putative corporate affiliates of [the defendant]." Def.'s Mot. at 5. The defendant argues that the corporate affiliate issue is driven by "speculation," id., and that, even if the plaintiff properly presented "the existence of an affiliate over which [the defendant] exerts control, [the p]laintiff [has not shown] that the affiliate engaged in activities in the District[,]" id. at 9.

Indeed, the plaintiff asserts that the defendant's "corporate affiliates and relationships are legitimate topics for jurisdictional discovery." Pl.'s Opp'n at 5. The plaintiff represents that he believes that the defendant is an "alter ego" of another corporation or group of corporate entities, id. at 8–9, and he "seeks to discover information on whether the individual entities [he identifies in his opposition] have a unity of interest and/or ownership with [the defendant,]" id. at 10. It appears that the plaintiff seeks this information in order to support his personal jurisdiction theory "that [the d]efendant disseminates its newspaper in the District." See id. at 6. To that end, the plaintiff seeks discovery for a list of entities based on knowledge derived from proffered articles and other sources, including information from the record in this case. See id. at 10–14.

"Ordinarily, a defendant corporation's contacts with a forum may not be attributed to . . . affiliated corporations[,]" but there is an exception "where affiliated parties are 'alter egos' of a corporation over which the Court has personal jurisdiction[.]" Diamond Chem. Co. v. Atofina Chemicals, Inc., 268 F. Supp. 2d 1, 7 (D.D.C. 2003). Furthermore,

8

> [t]o establish that a subsidiary is an alter ego of its parent, also referred to as "piercing the corporate veil," courts look to whether there is a unity of ownership and interest.  The District of Columbia Court of Appeals has stated that piercing the corporate veil requires showing that "'the corporation is not only controlled by those persons alleged to be alter egos of the corporation, but also that the separateness of the persons and the corporation has ceased and an adherence to the fiction of the separate existence of the corporation would sanction a fraud or promote injustice.'"  Furthermore, "since piercing the corporate veil is a doctrine of equity, 'the factor which predominates will vary in each case, and the decision to pierce will be influenced by considerations of who should bear the risk of loss and what degree of legitimacy exists for those claiming the limited liability protection of the corporation.'"

Id. at 7 (internal alterations and citations omitted).  As always, the party seeking jurisdictional discovery must have "at least a good faith belief that such discovery will enable it to show that the court has personal jurisdiction over the defendant."  Caribbean Broad. Sys., Ltd. v. Cable & Wireless P.L.C., 148 F.3d 1080, 1090 (D.C.Cir.1998).  Furthermore, "[j]urisdictional discovery . . . is justified only if the plaintiff reasonably demonstrates that [he] can supplement [his] jurisdictional allegations through discovery" and "mere conjecture or speculation is not enough." Exponential Biotherapies, Inc. v. Houthoff Buruma N.V., 638 F.Supp.2d 1, 11–12 (D.D.C. 2009) (internal quotations and citations omitted).

The Court agrees with the defendant that the plaintiff's reach for <u>jurisdictional</u> discovery of affiliates or other allegedly related entities is speculative, and the Court will not expand the scope of the jurisdictional discovery in this case to cover any such entities.  The Court granted jurisdictional discovery in this case based on the plaintiff's represented desire to seek

> any and all donations or payments to [the d]efendant originating in [the District of Columbia], any of [the d]efendant's e-mail lists or accounts identifying [District of Columbia] subscribers or viewers, any advertisements purchased in the United States by [the d]efendant, and the sales or distribution of Ta Kung Pao [ ] within this District, including at the Chinese embassy.

See Order at 6 (Nov. 30, 2020), ECF No. 21.  Now, the plaintiff proffers information underlying his belief that the entities it has identified are closely related to the defendant.  See, e.g., Pl.'s

9

Opp'n at 8 ("Since [the defendant] is an alter ego of a corporation—which [the p]laintiff is informed and believes it is—jurisdictional discovery is warranted over the corporation or corporations for which [the defendant] is an alter ego."); id. at 10–14 (reciting support for contentions that listed entities are related to the defendant).  However, while the plaintiff has proffered information about these entities' purported corporate relationships, he has not provided any information beyond "conjecture and surmise," Crist, 995 F. Supp. at 6, that these entities have contacts with the District of Columbia or otherwise enable the defendant to have alter ego contacts with the District.  In other words, the plaintiff presents nothing of substance to show that the identified affiliates distribute—or are the likely distributors of—the defendant's newspaper on behalf of the defendant.  Accordingly, the Court will grant the defendant's discovery motion as it relates to proposed discovery of corporate affiliates and relationships.

### C.     FSIA Discovery Efforts

The defendant contends that the plaintiff's strategies regarding corporate affiliates amounts to a strategy "to [o]btain 'FSIA Discovery[.]'"  Def.'s Mot. at 9.  However, the plaintiff acknowledges that "[t]he Court made clear that the FSIA issue was not to be decided now."  Pl.'s Opp'n at 14 (citing Hearing Tr. at 24:7–11 (Dec. 18, 2020), ECF No. 23 ("[FSIA-related discovery] is not going to be the subject of discovery as it [does not] relate[] to what we[ a]re here for today. I assume [the plaintiff is] just preserving that as an issue that he may want to raise at some point in the future, and I[ wi]ll address that issue at that time.")).

Ultimately, even if the plaintiff implicates the applicability of the FSIA in raising corporate affiliation issues, the Court has already concluded that including putative corporate affiliates of the defendant in jurisdictional discovery authorized by the Court would be inappropriate.  Thus, the defendant's discovery motion on this point is rendered moot.  The Court

reemphasizes that FSIA-related discovery would be premature at this stage in the litigation of this case.

## IV.  CONCLUSION

For the foregoing reasons, the Court must grant in part and deny in party the defendant's discovery motion.

**SO ORDERED** this 1st day of December, 2021. [3]

REGGIE B. WALTON
United States District Judge

---

[3] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.